UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| IN RE: JASON A. CANNELL,<br><br>Debtor.<br><br>──────────────────<br><br>JASON A. CANNELL,<br><br>Appellant,<br>v.<br><br>FIRST STATE BANK OF BLOOMINGTON,<br><br>Appellee. | Case No. 13-CV-3226 |

## OPINION

This is an appeal from an opinion entered by the United States Bankruptcy Court for the Central District of Illinois (Bankruptcy Case No. 12-71705) brought pursuant to 28 U.S.C. § 158(a)(1). Following a careful review, this court affirms the opinion of the bankruptcy court.

FACTS

The Debtor, Jason A. Cannell, has been a practicing attorney in Bloomington, Illinois, since 1992. In January 2009, the Debtor's law firm, Cannell & Maulson, P.C., executed a promissory note in the principal amount of $50,000 in favor of First State Bank of Bloomington (Bank). The Debtor personally guaranteed the note. On October 19, 2010, the Bank sued the Debtor and his law firm, to collect on the note. The Bank obtained a judgment on August 23, 2011, in the amount of $19,391.93 and costs.

Following the judgment, the Bank instituted supplementary proceedings in state court in order to locate assets of the Debtor and Cannell & Maulson, P.C., that could be used to satisfy

the judgment. The Debtor was personally served with a citation to discover assets on September 14, 2011. The Bank also served third-party citations on PNC Bank, Busey Bank, and Heartland Bank & Trust Co. because it believed that those entities may have been holding assets of the Debtor or his law firm. A citation was also served on Cannell Law Firm, P.C., an entity the Debtor had incorporated in January 2010. However, that citation was dismissed on June 5, 2012. Each citation, including the one served on the Debtor, contained the following language:

> "YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which he may be entitled or which may be acquired by or become due to him and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to him, until the further order of court or termination of the proceedings."

On July 30, 2012, the Debtor filed a voluntary Chapter 7 bankruptcy case. The Bank filed an adversary proceeding against the Debtor on November 5, 2012. The Bank's complaint sought to deny the Debtor's discharge on the basis that the Debtor intended to hinder, delay, or defraud the Bank by transferring or concealing his property within one year of filing.

At trial, The Debtor testified that he closed an individual bank account at Heartland Bank & Trust Co. in September 2011, shortly after he was served with the citation from the Bank to discover assets. According to the Debtor, he closed the account because he was concerned that it would be frozen following a state court judgment in the Bank's favor, thus preventing him from making court-ordered child support payments to his ex-wife. The Debtor also testified that he opened a joint bank account at Busey Bank with his fiancee, Tonya Howell, in January 2010.

The joint bank account was closed in August 2011. The Debtor stated that he closed this account because of his concern that it would be frozen. The Debtor worried that such action would negatively impact his fiancee's credit and that it would prevent him from making his child support payments. Upon closing the joint bank account with his fiancee and the Heartland account, the Debtor did not have any personal bank accounts until approximately one month after he filed his Chapter 7 petition.

After his bank accounts were closed, the Debtor testified that he took cash and check distributions from Cannell Law Firm, P.C. The Debtor would sign over his checks to his fiancee, who would deposit them in her individual account at Heartland Bank & Trust. Her account had been opened in September 2011, the month after she and the Debtor had closed their joint account. According to account statements, the Debtor made the following transfers to his fiancee's personal account: $1500 on September 30, 2011; $1500 on November 8, 2011; $1500 on December 1, 2011; $3024.14 on January 5, 2012; $3000 on February 24, 2012; $3000 on April 19, 2012; $3500 on May 31, 2012; and $1500 on July 25, 2012.

Both the Debtor and his fiancee testified that the transfers were made pursuant to an agreement that they had with each other that the Debtor would contribute monthly to their joint living expenses. According to their testimony, this arrangement began in January 2010, when the couple first began living together. The evidence presented at trial reflected expenditures consistent with the Debtor and his fiancee's testimony that the transfers were used for ordinary living expenses such as rent, utilities, and food. However, the Debtor acknowledged that he never sought authority from the Illinois state court to make the transfers to his fiancee's account, despite the fact that he had been personally served with a citation to discover assets on

September 14, 2011. The Cannell Law Firm, P.C. also never sought permission from the state court to make transfers to the Debtor or his fiancee despite the fact that it was subject to a third party citation to discover assets from April 25, 2012 through June 5, 2012.

The evidence also established that the Debtor failed to disclose the above transfers in his Statement of Financial Affairs when he filed his voluntary Chapter 7 petition on July 30, 2012. The Debtor's Schedule I included the following statement: "Debtor and his fiancee have paid their joint living expense from her bank account, since the Debtor was forced to close his bank account due to outstanding judgments and IRS liens." An Amended Statement of Financial Affairs was filed by the Debtor on December 4, 2012. Among other things, the statement added the following language: "Reg. Household expenses paid by fiancee." The amount of the transfers shown as having been made to his fiancee and the amount disclosed as still owing to her were both listed as "$0.00."

After hearing all of the evidence, the bankruptcy court issued an opinion on June 7, 2013. The court noted that the Debtor conceded that he transferred property to his fiancee within one year of the date of filing his Chapter 7 petition. Therefore, the only issue before the court was whether the Debtor made the transfers with the intent to hinder, delay, or defraud a creditor. The court concluded that the transfers were made with intent to hinder and delay a creditor.

In making its findings, the court noted that the transfers in question were generally for ordinary living expenses. However, the evidence established that the transfers occurred after the Debtor was served with a citation to discover assets which expressly prohibited him from transferring his property. Based on the citation, as well as other facts in the record, the court found that the Debtor made the transfers knowing that he was prohibited from doing so.

In its opinion, the court stated that "[t]he fact that the Debtor, a licensed attorney, never made any effort to seek approval of the proposed transfers and never sought to claim an exemption for funds to pay living expenses is evidence of his intent to hinder and delay the Bank." The court went on to find that "the Debtor confirmed at trial that, by closing his account and transferring money to an account only in Mrs. Cannell's name, he was trying to avoid the Bank's collection efforts." Therefore, the court came to the "inescapable conclusion" that the transfer of funds "in violation of the citation was done with the express intent to hinder and delay the collection efforts of the Bank." Based on this conclusion, the court denied the Debtor's discharge. The Debtor appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

When a party appeals a bankruptcy court's order, the bankruptcy court's conclusions of law are reviewed under a de novo standard and its findings of fact are reviewed for clear error. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008).

### II. DEBTOR'S APPEAL

In his Appeal, the Debtor has challenged the bankruptcy court's decision to deny his discharge pursuant to 11 U.S.C. §727(a)(2)(A). In order for the bankruptcy court to properly deny a discharge under §727(a)(2)(A), the court must find that: (1) the debtor transferred his property within one year before the date of the filing of the petition; (2) with the intent to hinder, delay, or defraud a creditor. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002). In this case, the Bankruptcy Court found that the Debtor transferred money with the intent to hinder and delay a creditor. In his Appeal, the Debtor does not challenge the fact that he transferred property.

Instead, the Debtor's only argument is that the court erred in finding that he made the transfers with the intent to hinder and delay a creditor. Specifically, the Debtor's appeal argues that:

1. The bankruptcy court erred in its conclusion that the subject transfers made by the Debtor were in violation of the state court citation to discover assets.

2. The bankruptcy court erred in its conclusion that the Debtor's failure to follow all of the procedural requirements of the Illinois statutory provisions governing a citation to discover assets should result in denial of his discharge pursuant to 11 U.S.C. §727(a)(2).

3. The bankruptcy court erred in its finding that the Debtor had knowledge of legal restrictions on use of funds created by Illinois citation to discover assets law, simply by the fact that the Debtor is an attorney.

4. The bankruptcy court erred in its conclusion that the subject transfers should result in denial of his discharge pursuant to 11 U.S.C. §727(a)(2), as the citation lien fully encumbered the funds that were transferred.

## A. Exemption

As noted above, the only issue before the bankruptcy court was whether the transfer of funds was done with the intent to hinder, delay, or defraud a creditor. In its written opinion, the bankruptcy court concluded that the funds in question were for ordinary living expenses. However, the court concluded that such expenses were not exempt from the citation to discover assets in force at the time of the transfers. Because the Debtor was on notice that he could not transfer non-exempt funds without court approval, his doing so was evidence of his intent to hinder and delay the Bank's collection efforts. The Debtor argues that funds for ordinary living expenses were exempt and, therefore, the transfers did not violate the citation and could not be

6

used by the court to show the Debtor's intent to hinder or delay the Bank.

The citation against the Debtor expressly stated that the Debtor was prohibited from transferring any property not exempt from the judgment. Section 2-1402(b)(1) of the Illinois Code of Civil Procedure, which contains a list of assets exempt from a citation, does not include an exemption for ordinary living expenses. 735 ILCS 5/2-1402(b)(1) (West 2012). However, Illinois law provides a way in which a debtor can request a court order exempting certain assets. Section 2-1402(b) requires that a prominent notice be sent to the citation respondent stating that the judgment debtor has the right to assert statutory exemptions against certain income or assets of the judgment debtor which may not be used to satisfy the judgment. 735 ILCS 5/2-1402(b) (West 2012). Further, Section 2-1402(l) provides a procedure to be followed at a citation hearing "at which the judgment debtor appears and seeks a declaration that certain of his or her income or assets are exempt." 735 ILCS 5/2-1402(l) (West 2012).

The bankruptcy court read the above statutes to mean that ordinary living expenses would only be exempt from the citation if the Debtor made a claim to the state court. Because the Debtor did not assert an exemption for the transfers made to his fiancee, the court found that the funds were not exempt. The Debtor contests the court's finding. He argues that ordinary living expenses have been found to be exempt in other cases and his failure to follow a certain procedure should not result in denial of his discharge. However, the cases cited by the debtor contain factual distinctions and, more importantly, do not apply the laws of the State of Illinois. See *In re Ciotti*, 448 B.R. 694 (Bankr.W.D.Pa. 2011); *In re Oliver*, 414 B.R. 361 (Bankr.E.D.Tenn. 2009); *In re Nascarella*, 492 B.R. 914 (Bankr.M.D.Fla. 2013).

After a careful review of the law governing citations in the State of Illinois, this court

agrees with the bankruptcy court that the burden to assert an exemption for ordinary living expenses is on the judgment debtor. See 735 ILCS 5/2-1402(b),(j),(l); *In re Mayer*, 388 B.R. 869, 873-74 (Bankr.N.D.Ill. 2008). Therefore, because the Debtor failed to affirmatively seek a determination from the state court that the assets he transferred to his fiancee were exempt from judgment, this court must conclude that those funds were not exempt under Illinois law. As such, the bankruptcy court did not err when it concluded that the transfers were made in violation of a pending citation; and its use of this fact to establish the Debtor's intent to hinder and delay a creditor was not erroneous.

## B. Intent

The Debtor's appeal comes down to an argument that the bankruptcy court erred in finding that the Debtor had the requisite intent to hinder or delay the Bank in its attempts to collect a judgment. At trial, evidence established that the Debtor made eight money transfers to his fiancee, totaling $18,524.14, during a period when he was personally subject to a citation to discover assets. The bankruptcy court made a factual finding that the Debtor transferred the assets knowing that he was prohibited from doing so. The court also noted that the transfers to the Debtor's fiancee, in violation of a pending citation, established that the Debtor did intend to hinder and delay the Bank's collection efforts.

After a careful review of the evidence, this court does not find clear error in the bankruptcy court's factual conclusion that the Debtor transferred assets knowing that he was prohibited from doing so. This court notes that there was sufficient evidence to find knowledge based on the actions of the Debtor and not, as the Debtor argues, based simply on the fact that he was an attorney. The evidence at trial, which included the Debtor's own testimony that he closed

his bank accounts to prevent his assets from being frozen, supports the bankruptcy court's finding that the Debtor had knowledge that his actions were prohibited and that he had the requisite intent to hinder and delay the Bank's efforts to collect on its judgment.

The record establishes that the Debtor transferred non-exempt assets to his fiancee at a time when he knew he was prohibited from doing so based on a citation to discover assets. This court is not persuaded by the Debtor's argument that his questionable attempts to disclose the transfers, after filing his bankruptcy petition, exonerate him from being found to have hindered or delayed the Bank's efforts to collect on its judgment. This court further declines the Debtor's invitation to reverse the bankruptcy court's opinion based on a theory that §727(a)(2)(A) does not apply where the transferred property was fully encumbered by a lien of the petitioning creditor. Therefore, based on all of the evidence in the record, this court cannot say that the bankruptcy court's finding that the Debtor acted with the intent to hinder or delay the Bank was clear error. The judgment of the bankruptcy court to deny the Debtor's discharge pursuant to 11 U.S.C. §727(a)(2)(A) is therefore affirmed.

IT IS THEREFORE ORDERED THAT:

(1) The Order of the Bankruptcy Court entered on June 7, 2013, is affirmed.

(2) This case is terminated.

ENTERED this 28th day of July, 2014

s/Colin S. Bruce
_____
COLIN S. BRUCE
U.S. DISTRICT JUDGE